## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                          **Case No. 8:16-CR-65-T-33JSS**

**GLOVER YAWN**

_____ /

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
### OBJECTION TO ARMED CAREER CRIMINAL SENTENCE

COMES NOW, the Defendant, GLOVER YAWN, by and through undersigned counsel and pursuant to Local Rule 3.01 and the Fifth and Sixth Amendments to the United States Constitution and objects to being sentenced under the provisions of Title 18, United States Code, Section 924(e), as well as United States Sentencing Guideline Chapters 4B1.4. As grounds in support, he would so state:

On February 9, 2016, Mr. Yawn was arrested for being in possession of a firearm as a convicted felon. PSR ¶ 7. A federal grand jury returned an indictment against him on August 17, 2016 charging a violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). Doc 1. Mr. Yawn pled guilty to violating Section 922(g)(1) of Title 18 on December 1, 2016 and this Court accepted that plea on December 2, 2016. The case is currently scheduled for sentencing on February 23, 2017 at 9:30 a.m.

The Office of United States Probation, in its initial Pre-Sentence Report, determined that Mr. Yawn was an Armed Career Criminal and under the statute was facing a fifteen-year mandatory minimum sentence, up to life. Additionally, they determined he should be sentenced under Chapter 4B1.4 of the Sentencing Guidelines and, after acceptance of responsibility, was a Total Offense Level 30. With a Criminal History Category of VI, they suggested his advisory Guideline range would be 180 to 210 months. PSR ¶ 106.

Additionally, if Mr. Yawn was not deemed an Armed Career Criminal, the Office of Probation determined his Base Offense Level under Chapter 2K2.1 of the Sentencing Guidelines would be 24 because they determined he had two prior controlled substance offense convictions. PSR ¶ 14. Two points were then assessed because the firearm in question was reported stolen. PSR ¶ 15. Probation then assessed an additional four points due to a determination that the firearm was possessed "in connection" with another felony, to wit: grand theft of a motor vehicle. PSR ¶ 16[1]

---

[1] Mr. Yawn was driving in a stolen vehicle when he was stopped by police. The firearm in question was inside a duffel bag that was in the rear passenger compartment of the vehicle. No evidence exists that Mr. Yawn stole the vehicle that he was driving. No evidence exists that Mr. Yawn knew the vehicle he was driving was stolen. Moreover, the facts as set forth in the probable cause affidavit and thus Paragraph 47 of the Pre-Sentence Report provides no evidence to contradict his post-Miranda statement that he won the vehicle in a poker game. The Manatee County State Attorney elected not to file charges against Mr. Yawn involving the theft of the vehicle. PSR ¶ 47.

If it is determined that Mr. Yawn's prior convictions as set forth in Paragraphs 30 and 32 of the Pre-Sentence Report are not violent felonies under the elements clause of Section 924(e) of Title 18, and this Court sustains his objection to the four level increase for "in connection" with the theft of the motor vehicle, his advisory Guideline Range, according to Probation, would be 92-115 months.

On July 3, 2008, Mr. Yawn was adjudicated guilty of Battery on a Detained Person, a violation of Florida Statute 784.082(3), in Manatee County Circuit Court Case # 2008-CF-0276. PSR ¶ 32. Florida Statute 784.082(3) makes a misdemeanor battery under F.S. 784.03(1) a third degree felony. F.S. 784.082(3). This is true because it was alleged that as a detained person, Mr. Yawn, actually and intentionally touched or struck another detained person. Therefore, the necessary elements for the offense of conviction were (1) Mr. Yawn was a detained person; (2) Mr. Yawn actually and intentionally touched or struck another individual; and (3) that other individual was also a detained person. See F.S. 784.03(1) and 784.082(3).

Similar to Florida Statute 784.07, the Florida Battery on a Law Enforcement statute, Statute 784.082(3) is not categorically a violent felony under the elements clause. The fact that in the first instance the battery had to occur against a law enforcement officer while in the second instance, this instance, the same battery had to occur by a detained person against a detained person, does not alter the level of force necessitated for conviction and therefore the same analysis applies. In, *Curtis*

*Johnson*, the Supreme Court made clear that when it was not necessary for the jury at trial nor the Court during a plea of guilt to determine whether the defendant "touched" or "struck" the victim, then a subsequent sentencing court must assume that the offense involved the lesser of the two, "touch" and that "touch" as set forth in Florida Battery convictions does not rise to the level of force necessary to qualify as a violent felony under ACCA. *See Curtis Johnson v. United States,* 559 U.S. 133 (2010).

Because Subsection (1)(a)(1) of the Florida Battery statute is non-divisible[2] --------"touch or strike" are alternative "means" and not "elements"[3]  this Court can only look to the statutory definition, i.e., the elements, of a defendant's prior offense and not "to the particular facts underlying those convictions." *Descamps v. United States*, 570 U.S. ---, 133 S.Ct 2276, 2283 (2013). As such, under *Curtis Johnson, Descamps, Mathis* and their progeny, Mr. Yawn's prior conviction in Paragraph 32 of the Pre-Sentence report is not a violent felony and cannot be utilized to enhance his sentence under Title 18, United States Code, Section 924(e) or Section 4B1.4 of the United States Sentencing Guidelines.

---

[2] In the Eleventh Circuit, whether or not Florida Battery is divisible is in dispute but Mr. Yawn asserts it is non-divisible. However, he will also address why his conviction does not qualify as a violent felony even assuming it is divisible and the modified categorical approach is utilized by this Court.

[3] Subsection(1)(a)(2) provides an alternative element which can be proven to uphold a conviction for Florida Battery, in lieu of actually and intentionally touching or striking the individual against their will, one can be charged and convicted of intentionally causing bodily harm to another person.

Although he does not believe the statute is divisible, if this Court were to determine Florida Battery is a divisible statute and therefore can utilize the modified categorical approach to determine whether Mr. Yawn was convicted of "striking" and not merely "touching" the victim in this case, the prior conviction for Battery on a Detained Person still does not qualify. The modified categorical approach allows the Court to look beyond the elements to documents approved by the Supreme Court in *Shepard v. United States*, 544 U.S. 13(2005), to make this determination. These documents include the charging document, judgment, plea agreement or plea colloquy. *Id.* Florida arrest affidavits cannot be used in the modified categorical inquiry because they do not establish with sufficient certainty the conduct involved in the state crime for which the modified categorical approach is being used to analyze. *See United States v. Rosales-Bruno*, 676 F.3d 1017, 1022. The information set forth in Paragraph 32 of the Pre-Sentence report came from the Manatee County Sheriff's Office probable cause affidavit which is the same, in practical terms, as an arrest affidavit. In addition, Mr. Yawn specifically disputed the facts as set forth in Paragraph 32 and objects to those facts being used in this determination. *See* PSR Addendum. Therefore, Mr. Yawn has not admitted to doing more than the least necessary force in committing the offense in Paragraph 32 i.e., touching, and no *Shepard* approved documents clarify the issue[4] As such, this Court must find that

---

[4] The Information in this case states that Mr. Yawn actually and intentionally "touch or strike"... and the judgment

the offense involved mere touching which does not reach the level of force necessary under *Curtis Johnson* to meet the elements clause of the violent felony definition and this prior conviction cannot be utilized to enhance Mr. Yawn's sentence in this fashion.

On February 15, 2008, Mr. Yawn pled nolo contendere to Felony Battery, in violation of Florida Statute 784.041(1)(a), in Manatee County Circuit Court case # 2006-CF-3797. Florida Statute 784.041(a)(a) makes it a felony if you (a) actually and intentionally touch or strike another person against their will; and (b) cause great bodily harm permanent disability, or permanent disfigurement[5] As outlined in the above argument in regard to the prior conviction for Florida Battery on a Detained Person, the Florida Felony Battery statutory section for which Mr. Yawn was convicted, is not, categorically, a violent felony because there is not an element the use, attempted use, or threatened use of physical force against the person of another at the requisite "force" level. *See Curtis Johnson*, 559 U.S. at 140.

For the reasons and argument stated above, this Court is restrained to find that Mr. Yawn did no more than merely touch another in this instance and therefore, the requisite degree of force not established and this prior conviction is not a violent

---

just recites the Florida Statute for which he was convicted, F.S. 784.03(1).

[5] This causation of great bodily harm differs from the causation of great bodily harm set forth in Subsection (1)(a)(2) of F.S. 784.03 because it lacks the requisite intent. Thus, one can be convicted under this statute if they actually and intentionally touch or strike an individual and accidentally cause great bodily harm.

felony. Additionally, even if this Court were to determine that Florida Statute 790.041(a) is divisible, no *Shepard* approved documents exist to establish Mr. Yawn either admitted[6] to or it was found by the Court during his guilty plea, that anything beyond mere touching was necessarily determined.

As with his prior Battery on a Detained Person conviction, the information in this case merely states that he "actually and intentionally touch or strike…." another individual. Although the government does have the transcript of the plea colloquy from this case, it does not provide adequate support for a finding that Mr. Yawn actually struck, as opposed to "touched" the individual as Mr. Yawn never assented to the facts being true. During a plea of guilt in the State of Florida, the Court must find that sufficient facts exist that would allow a finding beyond a reasonable doubt for each element of the offense alleged, however it need not specify which alternative mean, or even alternative element ( if pled as in this case in the Information –and this Court finds touch and strike are alternative elements and not means ) it finds. *Williams v. State*, 316 So.2d 267 (Fla. 1975). Thus, unlike the standard procedure here in the Middle District of Florida, the defendant need not acknowledge that the facts are true. In fact, a review of the transcript bares these points out. Since Mr. Yawn did not admit to the facts recited during the plea in his

---

[6] Mr. Yawn specifically disputed the facts as set forth in Paragraph 30 of the Pre Sentence Report and objects to them being utilized to determine whether the conviction was a violent felony. See PSR Addendum

prior case and the court did not make a finding on which means or element it determined occurred (touch or strike), this Court must find the level of force was mere touching. *See Curtis Johnson.*

*United States v. Rosales–Bruno, supra* holds that, like police reports, Florida arrest affidavits cannot be used in the modified categorical inquiry because they do not establish with sufficient certainty the conduct involved in the state crime for the modified categorical approach.  Nor can a judge treat a nolo contendere plea as though it had been an admission, by itself, of anything at all.  *Id.*  In Florida, the law expressly provides that a defendant may plead nolo contendere because he feels it to be in his best interest even though he does not admit guilt.  *Id.*

Finally, when a plea colloquy transcript or recording is reviewed under the modified categorical approach, *Shepard* limits it to a colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant. *See United States v. Calderone*, 716 F.3d 1345, 1348, 1351 (11th Cir. 2013).

Therefore, neither of the convictions listed in Paragraphs 30 and 32 are violent felonies.  As a result, Mr. Yawn does not have the requisite three prior convictions necessary to qualify him as an Armed Career Criminal and to punish him as such would be unconstitutional and procedural error[7]

---

[7] The issue as to whether F.S. 784.04(1) is categorically a violent felony is currently pending before the Eleventh Circuit Court of Appeals, en banc. Mr. Yawn incorporates all arguments set forth in the Appellants' brief in *United States v. Vail-Bailon*, 2016 WL 7536302(C.A.11)(Appellant Brief).

WHEREFORE, the Defendant, GLOVER YAWN, respectfully requests this Court find that he is not an Armed Career Criminal; that the statutory maximum penalty in this case is 10 years; and sentence him in accord with Chapter 2K2.1 of the United States Sentencing Guidelines.

DATED this 17th day of February 2017.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Dionja L Dyer*
Dionja L. Dyer
Bar No.0164518
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: 813-228-2715
Fax: 813-228-2562
Email: Dionja_Dyer@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of February 2017, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Natalie Adams

*/s/ Dionja L Dyer*
Dionja L. Dyer
Assistant Federal Defender

NO. 15-10351-EE

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**EDDY VAIL-BAILON,**
*Appellant,*

---

**On Appeal from the United States District Court
for the Southern District of Florida**

---

*EN BANC* **BRIEF OF THE APPELLANT
EDDY VAIL-BAILON**

---

**MICHAEL CARUSO**
  **Federal Public Defender**
**BRENDA G. BRYN**
**ANDREW L. ADLER**
  **Assistant Federal Public Defenders**
  **Attorneys for Appellant Vail-Bailon**
  **One East Broward Blvd. Suite 1100**
  **Ft. Lauderdale, Florida 33301**
  **Telephone No. (954) 356-7436**

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

---

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### United States v. Eddy Vail-Bailon
### Case No. 15-10351-EE

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Adler, Andrew L., Assistant Federal Public Defender

Adler, Robert, Assistant Federal Public Defender

Brannon, Hon. Dave Lee, United States Magistrate Judge

Bryn, Brenda G., Assistant Federal Public Defender

Caruso, Michael, Federal Public Defender

Ferrer, Wifredo A., United States Attorney

Galler, Brandy Brentari, Assistant United States Attorney

Hopkins, Hon. James M., United States Magistrate Judge

Matthewman, Hon. William, United States Magistrate Judge

Ryskamp, Hon. Kenneth L, United States District Judge

Smachetti, Emily, Assistant United States Attorney

United States of America, Plaintiff/Appellee

Vail-Bailon, Eddy Wilmer, Defendant/Appellant

## STATEMENT REGARDING ORAL ARGUMENT

The en banc Court has scheduled oral argument in this case during the week of February 6, 2017.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS ........................................................................... vi

STATEMENT OF SUBJECT MATTER AND APPELLATE

    JURISDICTION ........................................................................... xii

STATEMENT OF THE EN BANC ISSUES .........................................................1

STATEMENT OF THE CASE....................................................................................2

Course of Proceedings, Statement of Relevant Facts, and Disposition in the

    District Court ...........................................................................................2

The Appeal and the Panel's Decision .........................................................4

Standard of Review...........................................................................................8

SUMMARY OF THE ARGUMENT ........................................................................9

ARGUMENT AND CITATIONS OF AUTHORITY ............................................13

    THE DISTRICT COURT ERRONEOUSLY FOUND VAIL-
    BAILON'S CONVICTION FOR "FELONY BATTERY" UNDER
    FLA. STAT. § 784.041 HAD "AS AN ELEMENT THE USE,
    ATTEMPTED USE, OR THREATENED USE OF PHYSICAL
    FORCE AGAINST THE PERSON OF ANOTHER." .................................13

1.  Does Florida felony battery, Fla. Stat. § 784.041, categorically

qualify as a "crime of violence" under the "elements" clause of §

2L1.2's definition of "crime of violence," U.S. Sentencing Guidelines

Manual § 2L1.2 cmt. n.1(B)(iii)? ..................................................................13

   A.    The  Categorical  Approach  &  Modified  Categorical

   Approach ...........................................................................................14

   B.  Florida's Felony Battery Statute is Indivisible............................18

   C.  Because the "Touching or Striking" Element in the Felony

   Battery Statute is Indivisible, the Court Must Always Assume

   that Felony Battery is Committed by a Touching, and the

   Offense is Therefore Categorically Overbroad Vis-à-vis the

   Elements Clause ................................................................................24

   D.    At the Very Least, The Court Must Assume in this

   Particular Case that the Felony Battery was Committed by a

   Touching, and it Therefore Does not Satisfy the Elements

   Clause ................................................................................................29

2.  Does *State v. Hearns*, 961 So.2d 211, 219 (Fla. 2007); *Dominguez*

*v. State*, 98 So.3d 198, 200 (Fla. 2d DCA 2012); *Brooks v. State*, 93

So.3d 402, 403 (Fla. 2d DCA 2012); *State v. Williams*, 9 So. 3d 658,

660 (Fla. 4th DCA 2009), or any other Florida decision resolve the question whether Fla. Stat. § 784.041 requires the use of physical force or violence under Florida law?  If so, is Florida's definition of "physical force or violence" consistent with the definition of that term in federal law? ..............................................................................30

3.  Does the federal definition of "physical force," see *United States v. Curtis Johnson*, 559 U.S. 133, 140 (2010), require that a qualifying crime involve some type of intent to harm or knowledge of likely harm? ..........................................................................................35

    A.   The Federal Definition of "Physical Force" in *Curtis Johnson*..............................................................................36

    B.   The Panel Dissent Is Contrary to *Curtis Johnson* and *Castleman*............................................................................42

4.  Can Florida felony battery, Fla. Stat. § 784.041, be committed by a touching that causes bodily harm where there is no intent to harm and it is unlikely that harm will result? ...............................................46

    A.  Florida Felony Battery Does Not Require Intent to Harm............47

    B.   Florida Felony Battery Can Be Committed By Conduct Unlikely to Result in Harm ..................................................51

CONCLUSION .......................................................................................54

CERTIFICATE OF COMPLIANCE.......................................................................55

CERTIFICATE OF SERVICE ..............................................................................56

# TABLE OF CITATIONS

**Cases:**

*Brooks v. State,*

  93 So.3d 402 (Fla. 2d DCA 2012)................................................. 1, 30, 32-34

*Descamps v. United States,*

  570 U.S. __, 133 S. Ct. 2276 (2013) ..................................... 14, 17, 24-25, 29

*Dominguez v. State,*

  98 So.3d 198, 2000 (Fla. 2d DCA 2012) ...................................... 1, 30, 32-34

*Flores v. Ashcroft,*

  350 F.3d 666 (7th Cir. 2003) ................................... 6-8, 11, 37-40, 42, 45-46

*Hall v. State,*

  951 So.2d 91 (Fla. 2d DCA 2007) ................................................................27

*Harris v. State,*

  111 So.3d 922 (1st DCA 2013) ....................................................................27

*Jaimes v. State,*

  51 So.3d 445 (Fla. 2010) ........................................................................ 21, 23

*Jefferies v. State,*

  849 So.2d 401 (Fla. 2d DCA 2003) ........................................................ 27, 37

*Johnson v. United States,*

  559 U.S. 133 (2010)("*Curtis Johnson*") ........................................... 1, *passim*

*Leocal v. Aschroft,*

    543 U.S. 1 (2004) ........................................................................ 4-5, 37, 51

*Lewis v. State,*

    817 So.2d 933 (Fla. 4th DCA 2002) ............................................................. 50

*Mathis v. United States,*

    579 U.S. __, 136 S. Ct. 2243 (2016) ................................. 9, 15-17, 19, 22-25

*Mendenhall v. State,*

    48 So.3d 740 (Fla. 2010) ............................................................................ 48

*Moncrieffe v. Holder,*

    569 U.S. __, 133 S. Ct. 1678 (2013) ........................................................... 25

*Shepard v. United States,*

    544 U.S. 13 (2005) ............................................................... 3, 5, 9, 15, 23, 29

*Smith v. State,*

    76 So.3d 379 (Fla. 1st DCA 2011) .............................................................. 49

*Spradlin v. State,*

    967 So.2d 376 (Fla. 4th DCA 2007) ............................................................ 33

*State v. Hackley,*

    95 So.3d 92 (Fla. 2012) .............................................................................. 34

*State v. Hearns,*

    961 So.2d 211 (Fla. 2007) ...........................................1, 22-23, 26, 30-35, 48

*State v. Weaver,*

    957 So.2d 586 (Fla. 2007) ................................................................... 20-21, 23

*State v. Williams,*

    9 So.3d 658 (Fla. 4th DCA 2009) ................................................ 1, 30, 33, 47

*Taylor v. United States,*

    495 U.S. 575 (1990) ......................................................................................14

*Tobin v. Mich. Mut. Ins. Co.,*

    398 F.3d 1267 (11th Cir. 2005) ....................................................................34

*T.S. v. State,*

    965 So.2d 1288 (Fla. 2d DCA 2007) ................................................ 47, 49, 50

*United States v. Birge,*

    830 F.3d 1229 (11th Cir. 2016) ....................................................................24

*United States v. Braun,*

    801 F.3d 1301 (11th Cir. 2015) ....................................................................25

*United States v. Castleman,*

    572 U.S. __, 134 S. Ct. 1405 (2014) .............................. 11, 36, 38, 42, 45-46

*United States v. Eady,*

    591 Fed. Appx. 711 (11th Cir. Nov. 6, 2014) ....................................... 3, 5, 7

*United States v. Esprit,*

    841 F.3d 1235 (11th Cir. 2016) ............................................................ 16, 29

*United States v. Estrella,*

    758 F.3d 1239 (11th Cir. 2014) ..................................................... 8, 25-26, 29

*United States v. Green,*

    842 F.3d  1299, 2016 WL 6994213 (11th Cir. Nov. 20, 2016) ...................25

*United States v. Gundy,*

    842 F.3d 1156 (11th Cir. 2016) ........................................................ 15-17, 24

*United States v. Harris,*

    608 F.3d 1222 (11th Cir. 2010) .......................................................................41

*United States v. Howard,*

    742 F.3d 1334 (11th Cir. 2014) ........................................................ 16, 25, 29

*United States v. Kaley,*

    579 F.3d 1246 (11th Cir. 2009) ......................................................................24

*United States v. Lockett,*

    810 F.3d 1262 (11th Cir. 2016) ............................................................... 15-17

*United States v. Owens,*

    672 F.3d 966 (11th Cir. 2012) ........................................................................41

*United States v. Shannon,*

    631 F.3d 1187 (11th Cir. 2011) ......................................................................48

*United States v. Vail-Bailon*,

    838 F.3d 1091 (11th Cir. Sept. 28, 2016),

    *vacated, reh'g en banc* granted (11th Cir. Nov. 21, 2016).................... *passim*

*V.C. v. State*,

    63 So.3d 831 (Fla. 3d DCA 2011) ................................................49

*Voisine v. United States*,

    579 U.S. ___, 136 S.Ct. 2272 (2016) .........................................51

*Williams v. State*,

    65 So.3d 1209 (Fla. 2d DCA 2011) ..............................................49

**Statutes and Other Authorities**:

8 U.S.C. § 1326(a) ...........................................................2

8 U.S.C. § 1326 (b)(1) .......................................................2

18 U.S.C. § 16(a) ..................................................... 37, 38, 50

18 U.S.C. § 922(g)(8)(C)(i) ............................................. 41-42

18 U.S.C. § 924(e)(2)(B) ....................................................40

18 U.S.C. § 924(e)(2)(B)(i) .................................................42

18 U.S.C. § 3231 ...........................................................xii

18 U.S.C. § 3742............................................................xii

28 U.S.C. § 1291 ..........................................................xii

Fla. Stat. § 775.082(9a)(1)(o) .............................................32

x

Fla. Stat. § 775.084(1)(d)(1)(a) ................................................................30

Fla. Stat. § 776.08 ....................................................................................31

Fla. Stat. § 784.03(1)(a)(1) ................................................... 19, 27, 33, 37

Fla. Stat. § 784.041 ..................................................................... 1, *passim*

Fla. Stat. § 784.045(1)(a) .........................................................................47

Fla. Std. Jury Instr. (Crim.) 8.3 ............................................................... 19

Fla. Std. Jury Instr. (Crim.) 8.4 ................................................................49

Fla. Std. Jury Instr. (Crim.) 8.5 ................................................................18

Fla. Std. Jury Instr. (Crim.) 8.11 .............................................................20

Ind. Stat. 35-42-2-1 ..................................................................................38

U.S.S.G. § 2L1.2 ........................................................1, 2, 4-5, 9, 12-13, 35

U.S.S.G. §2L1.2(b)(1)(A) ..........................................................................2

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) .........................................................1, 13

Black's Law Dictionary 717 (9th ed. 2009) ..................................... 36, 40

Oxford English Dictionary 656 (2d ed. 1989) .........................................40

Webster's New International Dictionary 985 (2d ed. 1954) ............ 36, 40

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States.  The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States.  This appeal was timely filed on January 26, 2015, from the final judgment and commitment order entered that same date, what disposes of all claims between the parties to this cause.

## STATEMENT OF THE EN BANC ISSUES

1.  Does Florida felony battery, Fla. Stat. § 784.041, categorically qualify as a "crime of violence" under the "elements clause" of § 2L1.2's definition of "crime of violence," U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii)?

2.  Does *State v. Hearns*, 961 So.2d 211, 219 (Fla. 2007); *Dominguez v. State*, 98 So.3d 198, 2000 (Fla. 2d DCA 2012); *Brooks v. State*, 93 So.3d 402, 403 (Fla. 2d DCA 2012); *State v. Williams*, 9 So.3d 658, 660 (Fla. 4th DCA 2009), or any other Florida decision resolve the question whether Fla. Stat. § 784.041 requires the use of physical force or violence under Florida law? If so, is Florida's definition of "physical force or violence" consistent with the definition of that term in federal law?

3. Does the federal definition of "physical force," *see United States v. Curtis Johnson*, 559 U.S. 133, 140 (2010), require that a qualifying crime involve some type of intent to harm or knowledge of likely harm?

4.  Can Florida felony battery, Fla. Stat. § 784.041, be committed by a touching that causes bodily harm where there is no intent to harm and it is unlikely that harm will result?

## STATEMENT OF THE CASE

### Course of Proceedings, Statement of Relevant Facts, and Disposition in the District Court

In 2014, Eddy Vail-Bailon pled guilty in the Southern District of Florida to illegally reentering the United States after previously being deported, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).  (DE 10, 21, 39).   The Probation Office calculated his offense level under U.S.S.G. § 2L1.2, starting with a base offense level of 8, and adding a 16-level enhancement under §2L1.2(b)(1)(A) for reentering after a felony "crime of violence"[1]—specifically, a 2008 conviction for Florida "felony battery."  (PSI ¶¶11-12).  With a 3-level reduction for acceptance of responsibility, his total recommended offense level was 21. (PSI ¶ 20).  With only 1 criminal history point (for the felony battery conviction), and a Criminal History Category of I (PSI ¶¶23, 26), his recommended advisory guideline range was 37-36 months imprisonment.  (PSI ¶56).

Vail-Bailon objected to that guideline calculation on grounds that a conviction for Florida "felony battery" pursuant to Fla. Stat. § 784.041 was not a qualifying "crime of violence."  (DE 25).  He acknowledged that a person commits the offense of "felony battery" under § 784.041 when he "actually and

---

[1] The U.S. Sentencing Commission amended §2L1.2 effective November 1, 2016 to delete the 16-level enhancement for a prior felony conviction for a crime of violence.  However, that amendment has not been made retroactive.

intentionally touches or strikes another person against the will of another" and "causes great bodily harm, permanent disability, or permanent disfigurement." However, he explained that this offense can be accomplished by a "mere touching," and "the great bodily harm" portion of the statute "imposes strict liability as to the great bodily harm." (DE 25:1). Therefore, he argued, "because a Florida felony battery can be accomplished by a mere touching and without intent to cause great bodily harm, a violation of this statute does not qualify as a 'crime of violence.'" (DE 25:1-2, citing *Curtis Johnson v. United States*, 559 U.S. 133 (2010)).

The government responded that in *United States v. Eady*, 591 Fed. Appx. 711 (11th Cir. Nov. 6, 2014) (unpublished), a panel of this Court had found that a violation of Fla. Stat. § 784.041 "has as an element the use . . . of physical force against the person of another," because "[i]t is incorrect to say that a person can 'actually and intentionally' hit another person and cause 'great bodily harm, permanent disability, or permanent disfigurement' without using 'force capable of causing physical pain or injury.'" (DE 26:2, citing *Eady*, 591 Fed. Appx. at 719). *Curtis Johnson* was inapplicable, the government argued, because the Florida simple battery statute at issue there did not require "causing great bodily harm" like the felony battery statute at issue here. (DE 26:3).

3

At the sentencing hearing, defense counsel advised the court that the parties were in agreement that the facts alleged in ¶23 of the PSI about Vail-Bailon's "felony battery" offense were taken from probable cause affidavits and police reports. Therefore, under *Shepard v. United States*, 544 U.S. 13 (2005), they could not be considered to determine whether the recommended "crime of violence" enhancement was applicable. (DE 37:2-5). That determination, the government conceded, could only be based upon the judgment of conviction, which simply indicated that Vail-Bailon was convicted of "felony battery," a third-degree felony in violation of Fla. Stat. § 784.041. (DE 37:5-6).

The court overruled Vail-Bailon's objection, stating only that it "will consider this particular offense." (DE37:7). The court sentenced him to the bottom of the enhanced guideline range: 37 months imprisonment, followed by 3 years of supervised release. (DE 37:16-18; DE 29). The defendant remains incarcerated.

### The Appeal and the Panel's Decision

On appeal, Vail-Bailon argued as he did below that it was clear from *Curtis Johnson* that a felony battery conviction under § 784.041 did not satisfy the elements clause in the commentary to U.S.S.G. § 2L1.2, because any Florida battery offense, including "felony battery," contains the same "touches or strikes" language as simple battery, and thus could be accomplished by a mere (non-

4

violent) touching.   According to *Curtis Johnson*, he noted, a battery by mere touching was not a "violent felony."   In addition, he argued, because his offense was strict liability as to the "great bodily harm" caused, it lacked the *mens rea* necessary for an offense to satisfy the elements clause according to *Leocal v. Aschroft*, 543 U.S. 1 (2004). The government responded, citing *Eady* and other unpublished panel decisions, that one cannot "cause great bodily harm" without using "force capable of causing physical pain or injury."

Following oral argument, a panel of this Court issued a published decision vacating Vail-Bailon's conviction and remanding for resentencing.   *United States v. Vail-Bailon*, 838 F.3d 1091 (11th Cir. Sept. 28, 2016).   Writing for the majority, Judge Rosenbaum held that "felony battery under Fla. Stat. § 784.041 does not qualify as a 'crime of violence' under the elements clause in § 2L1.2 when it is committed by mere touching."  *Id.* at 1092.  She explained that the Supreme Court in *Curtis Johnson* had already held that Florida simple battery, when committed by a touching, did not satisfy the elements clause, and this Court was required to assume that Vail-Bailon's Florida felony battery offense was committed the same way (both because the first element was divisible, and because there were no *Shepard* documents establishing whether the offense involved a touching or a striking).  *See id.* at 1094-95.

5

She added that Florida felony battery's second element, requiring the unintentional causation of great bodily harm, did not "change the character of the mere touching" necessary to commit the offense. *See id.* at 1095-98. "Notice considerations" required that the inquiry under the elements clause be "forward-looking, from the perspective of the wrongdoer," she argued, "not backward-looking in hindsight." *Id.* at 1096. And, she pointed out, the crime can be committed purely accidentally, by simply tapping a person on the shoulder causing that person to startle, fall down the stairs and suffer grievous bodily harm, or by simply tickling another person who jerks back and falls through a window. *Id.*

A crime that occurs in this way does not qualify under the elements clause, Judge Rosenbaum explained, because it is neither intended nor likely that great bodily harm will result from a slight touch. In that regard, Judge Rosenbaum noted that immediately after the Supreme Court defined the term "physical force" as "*violent* force—that is, force capable of causing physical pain or injury to another person" in *Curtis Johnson*, it "significantly . . . directed readers to *Flores* [*v. Ashcroft*], 350 F.3d [666,] 672 [(7th Cir. 2003)]. At that pincite, *Flores* explained that 'violent' force is 'the sort that is ***intended to cause bodily injury, or at minimum likely to do so***. *Flores*, 350 F.3d at 672 (emphasis added)." 838 F.3d at 1096. A Florida felony battery by mere touching did not meet that definition, she explained, since the great bodily injury "caused" by the crime is neither intended

6

nor "likely" given the very slight degree of force involved. And, she reasoned, "the results of a specific incident of mere touching do not alter the fact that the nature of mere touching, in and of itself, as the Supreme Court concluded in *Curtis Johnson*, is not likely to result in bodily harm." *Id.* For that reason, Judge Rosenbaum concluded, a "Florida felony battery by mere touching cannot qualify as a 'crime of violence,' no matter what the injury resulting from the mere touching might turn out to be." *Id.*

Judge Jordan concurred "in full" with Judge Rosenbaum's opinion, but wrote separately to explain why three earlier unpublished decisions reaching a contrary result, including *Eady* (where he had served on the panel), were "flawed and [did] not constitute persuasive authority." *Id.* at 1098-99 (Jordan, J., concurring).

Judge Siler, sitting by designation, dissented. While he agreed with the majority that mere touching did not meet the definition of "violent force" in *Curtis Johnson*, he found that felony battery nonetheless met that definition because the offense required as a second element the causation of great bodily harm. *Id.* at 1099-1100 (Siler, J., dissenting). Judge Siler disagreed with what he termed the majority's "pivot" to Curtis *Johnson*'s citation to *Flores. Id.* at 1100. "The Supreme Court was aware of the *mens rea* language used in *Flores* and chose not to use it," he argued. In his view, "the operative word is 'capability'—that is, the

7

crime must be capable of causing physical injury." *Id.* "The issue from *Johnson* is whether the defendant's action is *capable* of causing bodily injury," he wrote, "not whether it is likely to cause injury. If something necessarily results from the touching, then the logic is that it had to have been capable of that result from the beginning." *Id.* (emphasis in the original).

The majority, however, took issue with Judge Siler's focus upon the phrase "force capable of causing physical pain or injury to another person" from *Curtis Johnson* in isolation, "unmoored from its context," which included the Supreme Court's immediate citation to *Flores*. *Id.* at 1097. The latter, the majority argued, helped clarify the meaning of "physical" and the "intended connotation" of "violent force" as defined in *Curtis Johnson*. *Id.*

The government petitioned the Court to rehear the case en banc. The Court granted the petition, vacated the panel opinion, and voted to rehear the case en banc.

## Standard of Review

Whether a prior conviction qualifies as a "crime of violence" under the Sentencing Guidelines is reviewed *de novo*. *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014).

## SUMMARY OF THE ARGUMENT

The offense of Florida felony battery, prohibited by Fla. Stat. § 784.041(1), categorically does not qualify as a "crime of violence" under the elements clause in the commentary to U.S.S.G. § 2L1.2, because it lacks as an element the use of "physical force" against the person of another.

Felony battery has two elements: 1) an intentional touching or striking against the will of another; and 2) the causation of great bodily harm, permanent disability, or permanent disfigurement.  In light of the Supreme Court's recent decision in *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243 (2016), the first element is "indivisible."  This is so because Florida law, particularly its standard jury instructions, establishes that touching and striking are alternative "means" of satisfying the first element.  They are not themselves alternative "elements" that the government must prove, and a jury must find, beyond a reasonable doubt.  As a result, under the categorical approach, this Court must assume that felony battery is committed by a touching, the least of the acts criminalized.  At the very least, this Court must make that assumption in this case, because there are no *Shepard* documents clarifying whether Vail-Bailon was convicted of touching or striking.

That assumption, coupled with the Supreme Court's decision in *Curtis Johnson v. United States*, 559 U.S. 133 (2010), is dispositive here.  In *Curtis Johnson*, the Court addressed whether Florida simple battery, when committed by

9

a touching, had as an element "physical force" for purposes of the elements clause. The Court first explained that this phrase was exclusively a matter of federal law, rendering irrelevant state-law cases interpreting analogous state-law sentencing provisions. The Court was nonetheless bound by Florida Supreme Court precedent interpreting the substantive elements of Florida battery. And it explained that, under such precedent, only the slightest nominal contact was necessary to constitute an offensive touching.

The Court held that such *de minimis* contact did not constitute "physical force" for purposes of the federal elements clause. That holding controls this case. The first element of felony battery is nothing more than simple battery, and it is identical to the form of simple battery considered in *Curtis Johnson*. Like that offense, it may be committed by an offensive touching, which requires only the slightest, most nominal contact. The Supreme Court squarely held that this exact conduct does not constitute "physical force."

The second element of Florida felony battery does not affect that conclusion. That element does no more than elevate a simple battery from a misdemeanor to a felony where it unintentionally results in great bodily harm. That such harm results from a simple battery, however, does not retroactively increase the degree of force required to commit the offense. The exact same degree of force necessary

10

to commit felony battery is necessary to commit simple battery, and *Curtis Johnson* squarely declared that degree of force insufficient.

This focus on the degree of force is essential because that is the touchstone of *Curtis Johnson*'s definition of "physical force."  Indeed, the Court repeatedly defined "physical force" as the "degree" of "strength" or "power" employed by the offender.  The Court further explained—both explicitly and by approvingly citing *Flores v. Ashcroft*, 350 F.3d 666 (7th Cir. 2003), a case involving an offense almost identical to Florida felony battery—that the way to determine whether the requisite degree or quantum of force exists is by assessing whether it is "likely" to cause injury or pain.  That is what the Court meant when it said that "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Curtis Johnson*, 559 U.S. at 140.

That interpretation is compelled by the explanatory passages surrounding this definition, the Court's immediate citation *Flores*, and the Court's subsequent endorsement of *Flores*' reasoning in *United States v. Castleman*, 572 U.S. __, 134 S. Ct. 1405 (2014).  Thus, while "physical force" does not require any *mens rea*, it does require a certain degree or quantum of force.  And that degree of force is measured by its likelihood of causing injury or pain, not by whether injury or pain in fact results.  While *Flores* looked only to the likelihood of injury, *Curtis Johnson* looked also to the likelihood of pain, a broader standard.  But that

11

standard has limits.  By using the word "capable," the Court did not suggest that any offense that might conceivably lead to pain or injury in a rare case involves "physical force."  Otherwise, the simple battery offense considered in *Curtis Johnson* itself—along with virtually every other non-violent offense—would have qualified, eliminating any distinction between violent and non-violent offenses.

That proper understanding of *Curtis Johnson*'s definition of "physical force" confirms that felony battery does not satisfy it.  Not only may it be accomplished by a mere touching, but it lacks any *mens rea* as to the causation of great bodily harm.  The felony battery offense was created to fill the gap between simple battery and aggravated battery, and the only difference between felony battery and aggravated battery in Florida is that the former lacks any *mens rea* as to the causation of harm.  Because felony battery prohibits mere *touching* that *unintentionally* results in great bodily harm, it necessarily captures conduct that is *unlikely* to (but nonetheless does) result in injury or pain.  Numerous real-world examples illustrate that scope.  And because that offense, just like the offense in *Curtis Johnson*, may be committed by a degree of force that is unlikely to cause injury or pain, it does not satisfy the definition of "physical force."

In sum, Florida felony battery does not have as an element the use of "physical force" against the person of another.  It therefore does not qualify as a "crime of violence" under the elements clause in U.S.S.G. § 2L1.2's commentary.

12

## ARGUMENT AND CITATIONS OF AUTHORITY

**THE DISTRICT COURT ERRONEOUSLY FOUND VAIL-BAILON'S CONVICTION FOR "FELONY BATTERY" UNDER FLA. STAT. § 784.041 HAD "AS AN ELEMENT THE USE, ATTEMPTED USE, OR THREATENED USE OF PHYSICAL FORCE AGAINST THE PERSON OF ANOTHER."**

The Court has asked the parties to focus their briefing on four issues.  This brief proceeds accordingly. .

**1. Does Florida felony battery, Fla. Stat. § 784.041, categorically qualify as a "crime of violence" under the "elements" clause of § 2L1.2's definition of "crime of violence," U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii)?**

By inquiring whether Florida felony battery "categorically" qualifies as a crime of violence under the elements clause, this question asks whether that offense *always* qualifies in every case.  The answer is no.  Quite the contrary, it *never* does.

The reason derives from the fact that the felony battery statute in Fla. Stat. § 784.041 is indivisible.  The Court must therefore apply the categorical approach and assume that the offense is committed in the least culpable way.  Here, that way is a touching, which requires only the most nominal, *de minimis* contact.  And the Supreme Court in *Curtis Johnson* squarely held that this very conduct does not require "physical force" within the meaning of the elements clause.

13

At the very least, that conclusion must be true in this particular case. For, even if the felony battery statute were divisible, as the panel majority asserted, the Court must still assume that Vail-Bailon's offense involved only a touching. That is so because the record in this case is devoid of any documentation establishing that his offense involved a striking rather than a touching, and a felony battery committed by a touching does not qualify under *Curtis Johnson*.

## A.    The Categorical Approach & Modified Categorical Approach

In determining whether an offense qualifies as a "crime of violence," courts must apply the "categorical approach." Under that familiar methodology, "courts may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). To implement the categorical approach, however, the Supreme Court has "recognized a narrow range of cases in which sentencing courts" may look beyond the statute and judgment of conviction and employ what is referred to as the "modified categorical approach." *Descamps*, 133 S. Ct. at 2283-84 (citation omitted). Those cases arise only where the statute of conviction contains alternative elements—some constituting a "crime of violence" and some not. In that scenario, "the statute is 'divisible,'" in that it "comprises multiple, alternative versions of the crime," and "a later sentencing

14

court cannot tell, without reviewing something more [than the statute and judgment of conviction], if the defendant's conviction" qualifies as a crime of violence. *Id.* at 2284; *see Shepard v. United States*, 544 U.S. 13 (2005) (authorizing courts applying modified categorical approach to consider limited class of documents).

The Supreme Court most recently held that a statute is not divisible where, instead of containing alternative elements (and thus alternative versions of the crime), the statute instead contains alternative "means" or ways of satisfying one of the elements. *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243 (2016). *Mathis* thus made clear that, where a statute is phrased disjunctively (as here with the first element of Florida felony battery), that merely begins—rather than ends— the divisibility analysis. The court must then determine whether the alternatives listed in the statute are elements (rendering the statute divisible) or means (rendering the statute indivisible). *See Mathis*, 136 S. Ct. at 2256 ("The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."); *United States v. Gundy*, 842 F.3d 1156, 1162-63 (11th Cir. 2016) (discussing *Mathis*' "threshold" "elements or means?" inquiry); *United States v. Lockett*, 810 F.3d 1262, 1268 (11th Cir. 2016) ("our inquiry can't end with simply looking at whether the statute is written disjunctively").

Moreover, *Mathis* explained that the key distinction between elements and means is that a prosecutor must prove, and the jury must unanimously find, beyond a reasonable doubt only the elements of the offense.  By contrast, the prosecutor need not select from alternative means, and a jury need not agree on or otherwise make any findings about which means the defendant's conduct involved.  *See Mathis*, 136 S. Ct. at 2256-57 (distinguishing elements, which "must be charged" and "prove[n] to a jury beyond a reasonable doubt," from means, which "need not be" charged, agreed upon by a jury, or found beyond a reasonable doubt); *Gundy*, 842 F.3d at 1162-63 (recognizing that, under *Mathis*, "[e]lements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction," whereas means "are mere real-world things— extraneous to the crime's legal requirements" that need not be proved or found by a jury beyond a reasonable doubt) (quoting *Mathis*, 136 S. Ct. at 2248); *United States v. Esprit*, 841 F.3d 1235, 1239 (11th Cir. 2016) (applying *Mathis* to determine whether disjunctive statutory alternatives were means or elements); *accord Lockett*, 810 F.3d at 1267-71 & n.3 (explaining distinction between means and elements).

State law controls the elements-or-means determination.  *See Mathis*, 136 S. Ct. at 2256-57; *Esprit*, 841 F.3d at 1240-41 & n.4; *Lockett*, 810 F.3d at 1270; *United States v. Howard*, 742 F.3d 1334, 1346 (11th Cir. 2014).  While various

sources of state law may enable a federal court to determine whether statutory alternatives are elements or means, *see Mathis*, 136 S. Ct. at 2256-57, standard jury instructions are particularly useful. *See Mathis*, 136 S. Ct. at 2257 (referring to "jury instructions" as relevant source); *Descamps*, 133 S. Ct. at 2290 (statutory elements are "all the jury instructions must . . . mention"); *Lockett*, 810 F.3d at 1271 (looking to state's "model jury instructions," which "confirm[ed]" that offense was indivisible). Indeed, because jury instructions, by their very nature, enumerate the elements of the offense, they specify exactly what must be proven to, and found by, a jury beyond reasonable doubt. *See Gundy*, 842 F.3d at 1173 (Jill Pryor, J., dissenting) ("The language used in jury instructions is significant because it must always include the crime's elements").[2]

---

[2]    Pattern jury instructions reflecting state law will *always* be relevant in determining whether statutory alternatives are elements or means. Of course, that does not mean jury instructions will be relevant once a statute is deemed divisible. For example, where a defendant pleads guilty to a divisible statute, jury instructions are not given and thus will not be available to identify the alternative element for which he was convicted. But the fact that, in such a case, jury instructions would not aid an application of the modified categorical approach, does not lessen the utility of standard jury instructions in resolving the threshold "means v. elements?" inquiry  for a disjunctively-worded statute. The panel majority in *Gundy* appears to have erroneously conflated these inquiries by suggesting that, in plea cases, pattern jury instructions are irrelevant for purposes of the threshold divisibility analysis. *See* 842 F.3d at 1169 n.10.

### B.    Florida's Felony Battery Statute is Indivisible

The statute at issue here provides: "A person commits felony battery if he or she: (a)   Actually and intentionally touches or strikes another person against the will of the other; and (b) Causes great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.041(1).  For purposes of the statute's divisibility, the relevant question is whether "touches or strikes" in subsection (a) represents alternative elements or means.  The panel opinion asserted that these terms were alternative elements.  *Vail-Bailon*, 838 F.3d at 1094.  That was incorrect.  Touching and striking represent alternative means of satisfying the first, indivisible element of the felony battery offense.

Florida's standard jury instructions compel that conclusion.  The standard jury instructions for felony battery provide as follows:

> To prove the crime of Felony Battery, the State must prove the following two elements beyond a reasonable doubt:
>
> 1.    (Defendant) actually and intentionally touched or struck (victim) against [his] [her] will; and
>
> 2.    (Defendant caused (victim) great bodily harm, permanent disability, or permanent disfigurement.

Fla. Std. Jury Instr. (Crim.) 8.5.[3]  This instruction makes clear that felony battery has only "two elements" that must be proven beyond a reasonable doubt.  While

---

[3] http://www.floridasupremecourt.org/jury_instructions/instructions-ch8.shtml.

18

the first element may be satisfied by either a touching or a striking, the prosecutor need not select, and the jury need not agree, which of those alternatives the defendant's conduct involved. As a result, under *Mathis*, those alternatives represent means, not elements.

If "touching or striking" were instead alternative elements, then the instruction would have bracketed those phrases, requiring the court to instruct the jury on the applicable alternative and requiring the jury to find that alternative beyond a reasonable doubt. That would have created two distinct felony battery crimes: felony battery by touching, and felony battery by striking. The statute does no such thing. There is only one form of felony battery under § 784.041(1).

The standard jury instructions for other Florida battery offenses solidify the conclusion that touching and striking are means, not elements. Particularly illustrative is the instruction for simple battery:

> To prove the crime of Battery, the State must prove the following element beyond a reasonable doubt:
>
> *Give 1 or 2 as applicable.*
>
> 1.    [(Defendant) intentionally touched or struck (victim) against [his] [her] will.]
>
> 2.    [(Defendant) intentionally caused bodily harm to (victim)].

Fla. Std. Jury Instr. (Crim.) 8.3; *see* Fla. Stat. § 784.03(1)(a). This instruction makes clear that simple battery has only a single element. But that element is

19

divisible: the two bracketed items represent alternative versions of that element, effectively creating two forms of simple battery. Critically, however, the first alternative element of simple battery, which is identical to the first element of felony battery, is not itself further divisible. Touching and striking are therefore means, not elements.

The standard jury instructions for several other Florida battery offenses reiterate that point. For example, the offense of battery on a law enforcement officer is, like felony battery, a derivative of simple battery, and the standard jury instruction shows that its first element is simple battery:

> To prove the crime of Battery on a [Law Enforcement Officer] . . . . , the State must prove the following four elements beyond a reasonable doubt:
>
> 1.    (Defendant) intentionally
>
>          [intentionally touched or struck (victim) against [his] [her] will]
>          [intentionally caused bodily harm to (victim)] . . . .

Fla. Std. Jury Instr. (Crim.) 8.11. Unsurprisingly, that first element is comprised of the two bracketed alternative elements for simple battery, again reflecting that touching and striking are means, not elements.

Significantly, that understanding is confirmed by Florida Supreme Court precedent. In *State v. Weaver*, 957 So.2d 586 (Fla. 2007), the prosecution charged the defendant with battery by intentionally touching or striking a law enforcement

20

officer, but the trial court instructed the jury on both the "touching or striking" element and the alternative "causing bodily harm" element. *Id.* at 586-87. In addressing whether the second instruction was "fundamental error," the Florida Supreme Court repeatedly recognized that "touching or striking" and "causing bodily harm" constituted two "forms" of simple battery, with "touching or striking" representing a single "form." *See id.* at 587-89. A few years later, summarizing *Weaver*, the Court reiterated that "intentional touching or striking" is one "form" of simple battery. *Jaimes v. State*, 51 So.3d 445, 449 (Fla. 2010). That characterization could not be correct if touching and striking were alternative elements.

Thus, in a simple battery case, Florida prosecutors must prove, and the jury must find, beyond a reasonable doubt that the defendant either intentionally: 1) touched or struck the victim; or 2) caused bodily harm. Again, that first alternative element of simple battery, which is not further divisible, is identical to the first element of felony battery. As a result, touching and striking represent alternative ways of satisfying that first element of felony battery, just as they represent alternative ways of satisfying the first alternative element of simple battery. They do not themselves represent alternative elements. Accordingly, the felony battery statute is indivisible.

21

In stating the contrary, the panel did not consider any of the arguments above. That was understandable, since the briefing and oral argument occurred before *Mathis* was decided. And although the panel's brief statement on that issue was supported by a lone citation to *Curtis Johnson*, *Vail-Bailon*, 838 F.3d at 1094 (citing *Curtis Johnson*, 559 U.S. at 136-37), the relevant passage from *Curtis Johnson* actually supports the argument that touching and striking are alternative means, not elements.

Specifically, after reciting the alternative elements of the simple battery statute, the *Curtis Johnson* Court stated: "Because the elements of the offense are disjunctive, the prosecution can prove battery in one of three ways. It can prove that the defendant 'intentionally caused bodily harm,' that he 'intentionally struck' the victim, or that he merely 'actually and intentionally touched' the victim." 559 U.S. at 136-37 (internal citation and brackets omitted). That observation comports with the analysis above: Florida simple battery has a single, divisible element, and there are "three ways" (*i.e.*, means) of satisfying it, with touching and striking representing two of those three alternative "ways."

In making that observation, the Supreme Court cited *State v. Hearns*, 961 So.2d 211 (Fla. 2007). As in *Curtis Johnson*, *Hearns* recited the two alternative elements of simple battery, and then stated that the offense could be committed by "three separate acts." *Id.* at 218. In the parlance of *Mathis*, that meant that simple

22

battery has two alternative elements ("touching or striking" and "causing bodily harm"), comprised of three alternative means (touching, striking, and causing bodily harm). While *Hearns* also loosely used the term "elements" to describe these alternatives, it was not using that term in the strict *Mathis*-sense. At no time did it hold that touching and striking are themselves alternative "elements" that, as understood by *Mathis*, a prosecutor must selectively charge and prove, and a jury must unanimously find, beyond a reasonable doubt. Indeed, were it otherwise, *Hearns* would be irreconcilable with Florida's longstanding standard jury instructions, and with the Florida Supreme Court's post-*Hearns* decisions in *Weaver* and *Jaimes* stating that there are only "two forms" of simple battery (*i.e.*, 1) battery by touching or striking; and 2) battery by causing bodily harm). That reading of *Hearns* would be particularly implausible, because *Hearns* was decided just two weeks before *Weaver*, with both opinions authored by the very same jurist.

In any event, even if *Curtis Johnson* could be interpreted differently, that would not preclude this Court from embracing Vail-Bailon's indivisibility argument. The relevant passage in *Curtis Johnson,* included only in the background section of the opinion, was dicta. The Court explained that, because the record in that case was devoid of any *Shepard* documents, it was required to assume that the battery offense involved only a touching. *Curtis Johnson*, 559 U.S. at 137. As a result, the divisibility of the simple battery statute was entirely

irrelevant and unnecessary to the Court's analysis. Thus, even if the background passage in *Curtis Johnson* could be read to suggest that touching or striking are alternative elements, that passage is dicta and therefore not binding precedent. *See United States v. Birge*, 830 F.3d 1229, 1233 (11th Cir. 2016) (reiterating that "dicta is not binding on anyone for any purpose") (citation omitted); *United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (explaining that "dicta is defined as those portions of an opinion that are not necessary to decide the case," whereas "the holding of a case is . . . comprised of both the result of the case and those portions of the opinion necessary to that result") (citations omitted).

Not only was the cited passage in *Curtis Johnson* dicta, but it pre-dated by several years both *Descamps*, which cemented the fundamental concept of divisibility, and *Mathis*, which clarified the critical distinction between elements and means in a disjunctively worded statute, and, for the very first time, definitively "instruct[ed] courts how to discern 'elements' from 'means.'" *Gundy*, 842 F.3d at 1162. Thus, *Curtis Johnson* could not have possibly conducted the divisibility analysis required by current Supreme Court precedent. Again, *Mathis* refined that analysis in a major way: no longer may courts assume that a statute is divisible merely because it is phrased disjunctively. Rather, courts must now determine whether the statutory alternatives are elements or means, and *Mathis* offered direction on how to make determination. As explained above, a post-

24

*Mathis* analysis here compels the conclusion that touching and striking are means, not elements.[4]

### C. Because the "Touching or Striking" Element in the Felony Battery Statute is Indivisible, the Court Must Always Assume that Felony Battery is Committed by a Touching, and the Offense is Therefore Categorically Overbroad Vis-à-vis the Elements Clause

Because touching and striking are alternative means of satisfying the first element of the felony battery offense, the statute is indivisible, and the "modified [categorical] approach . . . has no role to play." *Descamps*, 133 S. Ct. at 2285-86; *see Estrella*, 758 F.3d at 1245-46; *Howard*, 742 F.3d at 1345-46. The Court must therefore limit itself to the categorical approach. Employing that approach, the Court "must presume that the conviction rested upon nothing more than the least of the acts criminalized." *Moncrieffe v. Holder*, 569 U.S. __, 133 S. Ct. 1678, 1684 (2013) (citation omitted); *see Howard*, 742 F.3d at 1345. In the context of the elements clause, that presumption properly ensures that an offense will qualify as a "crime of violence" only if it "requires the government to establish, beyond a

---

[4]  A panel of this Court stated in pre-*Mathis* dicta that the simple battery statute was divisible. *United States v. Braun*, 801 F.3d 1301, 1305 (11th Cir. 2015). And post-*Mathis*, another panel cited *Curtis Johnson* for the proposition that the felony battery statute is divisible. *United States v. Green*, 842 F.3d 1299, 2016 WL 6994213, at *17 (11th Cir. Nov. 20, 2016). For the reasons set forth above, the statements in both decisions are demonstrably contrary to the analysis now compelled by *Mathis* and controlling Florida law. The en banc Court should take this opportunity to correct those misstatements of law and thereby clarify circuit precedent on this important issue.

reasonable doubt and *without exception*, an element involving the use, attempted use, or threatened use of physical force against a person for *every charge* brought under the statute." *Estrella*, 758 F.3d at 1244 (emphasis added; citation omitted).

Here, the least culpable way of committing felony battery is by a touching, not a striking. Accordingly, this Court must assume that all felony battery convictions in Florida are accomplished in that manner. That assumption, coupled with the Supreme Court's holding in *Curtis Johnson*, is dispositive here.

After assuming that the Florida simple battery offense in *Curtis Johnson* was committed by a touching, the Court analyzed whether that offense necessarily required the use of "physical force" for purposes of the elements clause. In doing so, the Court recognized that, under Florida law, any touching—"no matter how slight," including a mere "tap on the shoulder without consent"—was sufficient to constitute simple battery. *Curtis Johnson*, 559 U.S. at 138 (quoting *Hearns*, 961 So.2d at 218-19) (alteration and ellipsis omitted). After defining the term "physical force" (discussed in greater detail in Part 3 below), the Court proceeded to hold that such "nominal contact" did not rise to the level of "physical force" required to satisfy the elements clause. *See id.* at 138-45 (quoting *Hearns*, 961 So.2d at 219).

That holding controls this case. As discussed above, felony battery under Fla. Stat. § 784.041 derives from simple battery, and the first element of felony

26

battery is identical to the first, alternative element of simple battery. *Compare* Fla. § 784.041(1)(a) *with* Fla. Stat. § 784.03(1)(a)(1).  As those elements are identical, no more force is required to commit felony battery by a touching than to commit simple battery by a touching.  And, again, *Curtis Johnson* squarely held that, when Florida simple battery is committed by a touching, it does not require the degree of "physical force" necessary to satisfy the elements clause.

The only difference between the felony battery offense here and the simple battery offense in *Curtis Johnson* is that the former requires an additional element: the unintentional causation of great bodily harm, permanent disability, or permanent disfigurement. *See Harris v. State*, 111 So.3d 922, 925 (1st DCA 2013) ("felony battery wholly subsumes [simple] battery"); *Jefferies v. State*, 849 So.2d 401, 404 (Fla. 2d DCA 2003) (describing felony battery as a "species" of simple battery, "but with resulting and *unintended* great bodily harm"), *receded from on other grounds by Hall v. State*, 951 So.2d 91 (Fla. 2d DCA 2007).  Critically, however, that additional element does not mean that felony battery committed by a touching requires more force than simple battery committed by a touching.  Rather, it means only that the defendant's simple battery (accidentally) resulted in harm. As the panel majority correctly explained, "the fact that a mere touching actually [did] result in great bodily harm [does not] somehow change the character of the mere touching." *Vail-Bailon*, 838 F.3d at 1096.  In other words, that harm results

27

from simple battery does not retroactively increase the degree of force necessary to commit it.

Moreover, the causation of harm required by felony battery does not depend on the degree of force used to commit the otherwise simple battery. Rather, the resulting harm can derive from other factors, such as unique characteristics of the victim. For example, felony battery can occur by applying lotion to someone's skin, which then results in an allergic reaction. The requisite harm might also derive not from the touching itself, but from events that follow it. For example, felony battery can occur where the victim falls down a flight of stairs or off a precipice after being surprisingly tapped or tickled. *See infra* Part 4(B) (discussing additional examples). Thus, the requisite harm for felony battery does not require any additional degree of force than what is necessary to commit simple battery. And because felony battery can be committed by the same *de minimis* contact as the simple battery offense considered in *Curtis Johnson*, it too necessarily lacks the "physical force" required to satisfy the elements clause.

In sum, because this Court must always assume that Florida felony battery is committed by a touching, and such conduct does not require the use of "physical force," the offense is categorically overbroad vis-à-vis the elements clause. As such, it can never qualify as a "crime of violence" under that definition. *See Mathis*, 136 S. Ct. at 2257 (recognizing that, where offense sweeps more broadly

28

than relevant definition, it can never qualify thereunder); *Descamps*, 133 S. Ct. at

2292-93; *Esprit*, 841 F.3d at 1241; *Estrella*, 758 F.3d at 1244-45; *Howard*, 742

F.3d at 1349 & n.9.

> ### D.   At the Very Least, The Court Must Assume in this Particular Case that the Felony Battery was Committed by a Touching, and it Therefore Does not Satisfy the Elements Clause

Finally, even if the first element of § 784.041 were divisible, as the panel

majority assumed, the Court must still assume that the felony battery offense in

this particular case involved only a touching.  That is so because, as the panel

correctly observed, the record here is devoid of any *Shepard* documents

establishing whether Vail-Bailon's offense involved a touching or striking.  *Vail-*

*Bailon*, 838 F.3d at 1094.  Again, the same was true in *Curtis Johnson*, and that

omission required the Supreme Court to assume that the battery offense there

involved only a touching:

> Since nothing in the record of Johnson's 2003 battery conviction
> permitted the District Court to conclude that it rested upon anything
> more than the least of these acts, his conviction was a predicate
> conviction . . . only if "actually and intentionally touching" another
> person constitutes the use of "physical force" within the meaning of
> [the elements clause].

559 U.S. at 137 (internal citation and brackets omitted).

The Court must do the same here.  And, as explained immediately above and

supplemented further below, felony battery when committed by a touching does

not have as an element the use, attempted use, or threatened use of "physical

29

force," as defined by *Curtis Johnson*. Accordingly, Vail-Bailon's felony battery

offense does not qualify as a crime of violence.

2.      Does *State v. Hearns*, 961 So.2d 211, 219 (Fla. 2007); *Dominguez v. State*,
        98 So.3d 198, 200 (Fla. 2d DCA 2012); *Brooks v. State*, 93 So.3d 402, 403
        (Fla. 2d DCA 2012); *State v. Williams*, 9 So. 3d 658, 660 (Fla. 4th DCA
        2009), or any other Florida decision resolve the question whether Fla.
        Stat. § 784.041 requires the use of physical force or violence under
        Florida law?  If so, is Florida's definition of "physical force or violence"
        consistent with the definition of that term in federal law?

The Florida Supreme Court's decision in *Hearns* establishes that felony

battery under Fla. Stat. § 784.041 does not involve the use of physical force or

violence for purposes of Florida's state-law recidivist sentencing provisions. The

above-cited intermediate appellate decisions to the contrary disregard *Hearns* and

are irreconcilable with it. Thus, as to the particular offense of felony battery,

Florida law, as articulated in *Hearns*, aligns with the elements clause. But

regardless, the resolution of that issue under Florida law is immaterial here. *Curtis*

*Johnson* made clear that the interpretation of the elements clause, and its phrase

"physical force," is exclusively a matter of federal law for the federal courts.

\* \* \*

In *Hearns*, the Florida Supreme Court addressed whether battery on a law-

enforcement officer ("BOLEO") was a "forcibly felony" under Florida's violent

career criminal ("VCC") statute. Fla. Stat. § 775.084(1)(d)(1)(a). The statute

defined that term to "mean[ ] treason; murder; manslaughter; sexual battery;

carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and *any other felony which involves the use or threat of physical force or violence against any individual*." Fla. Stat. § 776.08 (emphasis added). *Hearns* concluded that BOLEO did not satisfy this latter clause, known as the "catch-all" provision. 961 So.2d at 219.

The court reasoned that a contrary conclusion "could lead to potentially outrageous results." *Id.* First, employing the canon of construction *ejusdem generis*, it emphasized the severity of the preceding enumerated offenses and found that BOLEO, which could be committed by merely "tapping an officer on the shoulder" or "shooting a spitball" at an officer, was "not in the same league." *Id.* Second, it observed that, although simple battery was a misdemeanor that could never be a forcible felony, "BOLEO involves the exact same conduct . . . , the only difference being the victim's status." *Id.* Because the ramifications of classifying BOLEO as a forcible felony "would be significant," including its potential "use[ ] to enhance a defendant's sentence to life in prison," the Court found that "[s]uch a disparity in sentencing, stemming from the exact same conduct, seem[ed] out of proportion." *Id.* And, finally, the Court emphasized that the VCC statute "specifically enumerated two types of battery: aggravated battery and sexual

31

battery." *Id.* But because it failed to enumerate BOLEO in particular or "battery" in general, the canon of construction *expressio unius est exclusio alterius* indicated that the Legislature's omission of BOLEO was deliberate. *Id.*

Although *Hearns* addressed BOLEO, its reasoning applies equally to felony battery under Fla. Stat. § 784.041. First, like simple battery and BOLEO, felony battery can be committed by nominal contact—tapping a shoulder, tickling a belly, applying lotion to skin, or spitting on another—and it is therefore "not in the same league" as the enumerated offenses. Second, felony battery, like BOLEO, can "involve[ ] the exact same conduct" as simple battery, the only difference being that it happens to result in bodily harm. As explained above, that harm does not change the nature of the defendant's simple battery conduct, and, as explained below, the causation of harm is unintentional. Third, because the VCC statute specifically enumerates aggravated and sexual battery but not felony battery, the Legislature presumably sought to exclude the latter from its scope.

Notwithstanding *Hearns*, intermediate appellate courts have either held (*Williams* and *Brooks*) or stated in dicta (*Dominguez*) that felony battery under Fla. Stat. § 784.041 satisfied the materially-indistinguishable "catch-all" provision of Florida's prison releasee reoffender ("PRR") statute, Fla. Stat. § 775.082(9a)(1)(o). *See Hearns*, 961 So.2d at 217 (affording PRR and VCC catch-all provisions same

meaning in battery context).  In doing so, however, they failed to recognize, much less apply, the controlling precedent in *Hearns*.

Indeed, *Dominguez* and *Williams* failed to even cite *Hearns*.  That omission was particularly flagrant in *Williams*, because the trial court there ruled in favor of the defendant based on *Spradlin v. State*, 967 So.2d 376, 378 (Fla. 4th DCA 2007), which had relied extensively on *Hearns* to hold that felony battery under § 784.03(2) did not satisfy the catch-all provision.  *Williams*, 9 So.3d at 659.  And, while the court in *Brooks* did cite *Hearns*, that reference came only in the form of a "cf." citation, failing to appreciate *Hearns*' dispositive relevance.  93 So.3d at 403. Indeed, in the parenthetical appended to that citation, the court merely summarized *Hearns*' BOLEO holding, but made no mention of the reasoning upon which that holding depended.  *Id.*[5]

Rather than applying *Hearns*, *Dominguez*, *Brooks*, and *Williams* all simply assumed—without explanation or discussion—that because felony battery requires bodily harm, it cannot be committed without "physical force or violence." However, that assumption is irreconcilable with the reasoning and holding in

---

[5]   In that parenthetical, *Brooks* also quoted from one, in-passing sentence in *Hearns*, where the Court merely repeated the parties' agreement that "*intentionally* causing bodily harm involves the use or threat of physical force or violence." *Hearns*, 961 So.2d at 218 (emphasis added).  That proposition, however, has no bearing on felony battery, because the requisite causation of harm in a felony battery offense is *unintentional*, as explained below in Part 4(A).

*Hearns*. As explained above, felony battery, like BOLEO, can be committed by the same degree of force necessary to commit simple battery, and it is not enumerated in the statute like aggravated and sexual battery. And *Hearns* held that BOLEO, as a non-enumerated battery offense capable of being committed by nominal contact, did not satisfy the catch-all provision. The same must also be true of felony battery. *Cf. State v. Hackley*, 95 So.3d 92, 95 (Fla. 2012) (recognizing that, under *Hearns*, even battery committed during the course of burglary "is not a qualifying offense under the PRR statute"). Because the Florida Supreme Court's decision in *Hearns* compels that conclusion, this Court is not bound by contrary intermediate appellate court decisions. *See Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267, 1272 (11th Cir. 2005) (explaining that federal courts are bound by state court intermediate appellate decisions only if there is no "persuasive indication" that state's highest court would decide issue differently).

In any event, and notwithstanding the discussion above, whether felony battery qualifies under Florida's catch-all provision is immaterial here. The Supreme Court in *Curtis Johnson* made it abundantly clear that, while federal courts are bound by the Florida Supreme Court's interpretation of the elements of an offense (*i.e.*, what conduct is necessary to satisfy an element), their interpretation of the federal elements clause is purely a matter of federal law:

> Johnson argues that in deciding whether any unwanted physical touching constitutes "physical force" under [the federal elements

34

clause], we are bound by the Florida Supreme Court's conclusion in *Hearns* that it does not constitute "physical force." That is not so. The meaning of "physical force" in [the elements clause] is a question of federal law, not state law. And in answering that question we are not bound by a state court's interpretation of a similar—or even identical—state statute.

559 U.S. at 138.

Thus, even if the Florida Supreme Court had established that felony battery under § 784.041 did *not* satisfy the similarly-worded PRR catch-all provision, that would have no bearing on whether that offense satisfies the elements clause in U.S.S.G. § 2L1.2. Revealingly, all three opinions at the panel level in this case implicitly agreed about this aspect of *Curtis Johnson*. Despite the disagreements about *Curtis Johnson*, none looked to Florida cases interpreting Florida's recidivist catch-all provisions to interpret the federal elements clause. And, indeed, Vail-Bailon is unaware of any prior decisions from this Court that have done so. *Curtis Johnson* precludes the Court from suddenly embarking on that wrong course.

> **3.    Does the federal definition of "physical force," *see United States v. Curtis Johnson*, 559 U.S. 133, 140 (2010), require that a qualifying crime involve some type of intent to harm or knowledge of likely harm?**

The federal definition of "physical force" articulated in *Curtis Johnson* does not require a specific intent to harm or knowledge of likely harm. However, the panel majority was eminently correct that "physical force" in this context requires a degree of power or strength likely to cause bodily harm or inflict pain. The panel

dissent's contrary understanding is irreconcilable with the holding of *Curtis Johnson*, the explanatory context surrounding its definition of "physical force," and the Supreme Court's further clarification of that definition in *United States v. Castleman*, 572 U.S. ___, 134 S. Ct. 1405, 1412 (2014).

### A. The Federal Definition of "Physical Force" in *Curtis Johnson*

In *Curtis Johnson*, the Supreme Court rejected the common-law definition of "force" and held that, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another." 559 U.S. at 140 (emphasis in original). Several key passages surrounding that definition explain its meaning. In those passages, the Court repeatedly understood "physical force" to mean a "degree" of "strength" or "power" likely to cause injury or inflict pain in the normal case.

The Court began by rejecting the "specialized meaning [given to the word 'force'] in the field of physics: a cause of the acceleration of mass." *Id.* at 138-39. Instead, the Court opted for the word's "more general usage," which meant:

> "strength or energy; active power; vigor; often an ***unusual degree of strength or energy***," "power to affect strongly in physical relations," or power, violence, compulsion, or constraint exerted on a person." [Webster's New International Dictionary 985 (2d ed. 1954)]. Black's Law Dictionary 717 (9th ed. 2009) . . . defines "force" as "***power***, violence, or pressure directed against a person or thing." And it defines "physical force" as "force consisting in a physical act, esp. a violent act directed against a robbery victim." *Ibid*. All of these definitions suggest a ***degree of power*** that would not be satisfied by the merest touching.

36

559 U.S. at 139 (emphases added; brackets omitted).  By emphasizing the "degree" of "strength" or "power," the Court focused on the quantum of force being employed by the offender, not the result or outcome of that force on another.

Unlike the common-law definition of "force," which encompassed only the slightest touching, this "more general usage" of "force" fit well in the context of the elements clause.  *Id.*  That clause, the Court emphasized, was interpreting the term "violent felony."  In that regard, the Court relied on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), where it had interpreted a "very similar" definition of "crime of violence" in 18 U.S.C. §16(a) to "'suggest[ ] a category of violent, active crimes.'"  *Id.* at 139-40 (quoting *Leocal*, 543 U.S. at 11).  "Just so here," the Court concluded.  *Id.* at 140.

After emphasizing this statutory context, the Court adopted the definition of "physical force" as "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Id.* at 140 (emphasis in the original).  Immediately following that definition was the citation: "*See Flores v. Ashcroft*, 350 F.3d 666, 672 (C.A.7 2003) (Easterbrook, J.)."  *Id.*.  As the panel majority correctly noted, that conjoined citation was not included there by "accident," but rather was a deliberate endorsement of Judge Easterbrook's reasoning in *Flores*. 838 F.3d at 1096-97.  And indeed, there cannot be any dispute as to the Court's intent in that in

37

regard, as it thereafter explicitly confirmed in *Castleman* that it had "cited [*Flores*] with approval in *Johnson*." 134 S. Ct. at 1412.

In *Flores*, the Seventh Circuit considered whether an Indiana battery offense was a "crime of violence" under the similarly-worded elements clause in § 16(a). *Flores*, 350 F.3d at 669. And notably, the battery offense to which Flores pled guilty is very similar to the felony battery offense at issue here. It required two elements: 1) a knowing or intentional touching (in a rude, insolent or angry manner); and 2) the causation of bodily injury. *Id.* at 670; *see* Ind. Stat. § 35-42-2-1. Moreover, as in Florida, the intentional touching element could be accomplished by "any contact, however slight." *Flores*, 350 F.3d at 670. Thus, the *Flores* court recognized that this offense could be committed by a "paper airplane inflict[ing] a paper cut, a snowball caus[ing] a yelp of pain, or a squeeze of the arm caus[ing] a bruise," none of which could be described as "violent." *Id.* As a result, and notwithstanding the causation of bodily injury element, the court concluded that this offense did not satisfy the elements clause. For that reason alone, *Curtis Johnson*'s approval of *Flores* is highly instructive here.

But there is more. On the page of the *Flores* opinion favorably cited in *Curtis Johnson*, Judge Easterbrook set forth the court's reasoning. Presaging the precise distinction later drawn in *Curtis Johnson*, he explained that, in the "crime of violence" context, the term "physical force" did not mean merely "the

acceleration of mass," as it did in the "physics and engineering sense." *Id.* at 672. If it did, he explained, *every* offense would be a "crime of violence" because every offense requires at least some acceleration of mass. "Physical force" therefore required more:

> To avoid collapsing the distinction between violent and non-violent offenses, we must treat the word "force" as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature—the sort that is intended to cause bodily injury, *or at a minimum likely to do so*. . . . Otherwise "physical force against" and "physical contact with" would end up meaning the same thing, even though these senses are distinct in law.

*Flores*, 350 F.3d at 672 (emphasis added). That approach accords with the one adopted in *Curtis Johnson*. In order to prevent the phrase "crime of violence" from encompassing clearly non-violent crimes, the Supreme Court insisted on a certain "degree" of force, as measured (for starters) by its likelihood of causing injury.

While Judge Easterbrook noted in *Flores* that force "intended to cause bodily injury" would qualify as "violent force," it is clear from the opinion as a whole that in so stating, he was not requiring a specific intent to cause bodily injury. Rather, he was stating that force "intended to cause bodily injury" would satisfy the minimum standard for differentiating violent from non-violent force: namely, violent force must be of a degree that is "*at a minimum likely*" to cause injury. In most circumstances, undoubtedly, force undertaken with the specific intent to cause bodily injury will be likely to bring about that result. However, one

39

can still employ a degree of force that is likely to cause injury without any specific intent to do so or without any knowledge that injury will result.

In approving the reasoning in *Flores*, the *Curtis Johnson* Court did not incorporate an intent component into the definition of "physical force." Instead, it adopted *Flores'* likelihood of injury analysis, as necessary to measure whether the requisite "degree" of force exists. The only gloss the Supreme Court added to the *Flores* dividing line between violent and non-violent force, was its inclusion of force likely to cause pain (if not injury) as a "degree" of force that would meet the elements clause as well.

The Court confirmed its intent in that regard in its ensuing discussion in *Curtis Johnson*. Notably, the Court followed its approving citation to *Flores*, by explaining:

> Even by itself, the word "violent" in § 924(e)(2)(B) connotes a ***substantial degree*** of force. Webster's Second 2846 (defining "violent" as "moving, acting, or characterized, by physical force, esp. by ***extreme*** and sudden or by unjust or improper force; furious; severe; vehement . . ."); 19 Oxford English Dictionary 656 (2d ed. 1989) ("characterized   by the exertion of great physical force or ***strength***"); Black's 1706 ("of, relating to, or characterized by ***strong*** physical force"). When the adjective "violent" is attached to the noun "felony," its connotation of ***strong physical force*** is even clearer.

*Id.* (emphases added; brackets omitted). This explanation, consistent with the general usage of the term "*violent*," makes clear that "physical force" in the context of a "violent felony" or "crime of violence" definition requires a

substantial "degree" of "strength" or "power." Indeed, the Court reiterated that understanding later in the opinion, where it reminded: "As we have discussed . . . , the term 'physical force' itself normally connotes force strong enough to constitute power—and all the more so when it is contained in a definition of 'violent felony.'" *Id.* at 142. And again, the "degree" of "strength" or "power" (now repeated multiple times in the opinion) refers to a quantum of force, not to a particular result.[6]

But it was in a final passage that the Court ultimately clarified the precise and minimum measure by which to determine whether the requisite "degree" of force exists. In that passage, the Court responded to—and squarely rejected—the government's contention that a mere touching must constitute "physical force" in the ACCA's elements clause, since a similar-but-also-different elements clause in § 922(g) specified that the "use, attempted use, or threatened use of physical force" "would reasonably expected to cause bodily injury." *Id.* at 143 (discussing 18

---

[6] Indeed, this Court has always interpreted *Curtis Johnson* in that way, having previously concluded that even the most violent-sounding offenses did not satisfy the elements clause if they could be committed by minimal contact. *See, e.g.,* *United States v. Owens*, 672 F.3d 966, 971 (11th Cir. 2012) (convictions for second degree rape and sodomy did not satisfy *Curtis Johnson*, because the statute "require[d] the act of sexual intercourse, which requires only slight penetration," not "strong physical force or a substantial degree of force"); *United States v. Harris*, 608 F.3d 1222, 1226 & n.3 (11th Cir. 2010) (accepting government's concession that sexual battery on a child did not satisfy *Curtis Johnson* because statute of conviction "could be violated by the union with the sexual organ of another, and under Florida law union means contact") (citation omitted).

U.S.C. § 922(g)(8)(C)(i)). Because the elements clause in 18 U.S.C. § 924(e)(2)(B)(i) lacked this "reasonably expected" qualifier, the government urged the Court to infer its absence in that provision. The Court rejected that argument as a matter of statutory construction. *Id.* And it further noted that even as a matter of logic, drawing the negative inference the government urged would not mean that "'physical force' would consist of the merest touch. It might consist, for example, of *only that degree of force necessary to inflict pain—a slap in the face, for example*." *Id.* (emphasis added).

In so stating, the Court indicated that the degree of power or strength required to satisfy the elements clause is that which is likely to cause bodily injury, or, at a minimum, to inflict pain. That, however, appears to be the only addition to the *Flores* definition of "violent force" by *Curtis Johnson*. By that addition, the Court ultimately broadened the formulation of the standard in *Flores* by permitting measurement of the degree of force not only by its likelihood of causing injury, but also by its likelihood of inflicting pain—a somewhat lower threshold. But a mere touch/nominal contact falls below even that lowered threshold.

### B.    The Panel Dissent Is Contrary to *Curtis Johnson* and *Castleman*

Rather than analyzing the "degree" of force necessary to commit felony battery, as *Curtis Johnson* requires, the panel dissent instead focused exclusively on the result of the offense (*i.e.*, the existence of great bodily harm) and reasoned

backwards from the harm. In doing so, it opined: "the issue from [*Curtis*] *Johnson* is whether the defendant's action is *capable* of causing bodily injury, not whether it is likely to cause the injury. If something necessarily results from the touching, then the logic is that it had to have been capable of that result from the beginning." *Vail-Bailon*, 838 F.3d at 1100 (Siler, J., dissenting). That reasoning is wrong since, as explained in the preceding section, the *Curtis Johnson* Court used the term "capable" specifically to denote a degree of force "likely" to cause pain or injury. But the dissent's reasoning cannot be squared with *Curtis Johnson* for other reasons as well.

As an initial matter, the dissent's sweeping understanding of the word "capable," as used in *Curtis Johnson*, would untenably swallow the holding of that very case. As explained above, the Supreme Court held that the mere touching required to commit simple battery in Florida did not rise to the level of "physical force." But simple battery in Florida is very much "capable" of causing great bodily harm, as the dissent used that term. Indeed, the felony battery statute at issue here illustrates that point. Again, felony battery is merely simple battery that unintentionally results in great bodily harm. If a mere touching were not "capable" of causing great bodily harm in some unlikely cases, then the Legislature would have excluded touching entirely as a means of committing felony battery and limited the first element to striking. Thus, because it is clear that simple battery

43

conduct is "capable" of causing harm in rare cases, if the dissent's interpretation of *Curtis Johnson*'s definition were correct the Supreme Court would have reached the opposite result in *Curtis Johnson*. It would have held that simple battery required "physical force" because of the mere possibility of that unlikely case. Rather than embrace such an internally contradictory reading, this Court should read *Curtis Johnson*'s definition of "physical force" in light of the result it reached in that case. Doing so compels the conclusion that the word "capable" signifies the "degree" of force that creates a likelihood of injury, or at least, pain.

Not only did the panel dissent fail to consider *Curtis Johnson*'s result, but it mistakenly interpreted *Curtis Johnson*'s definition of "physical force" in "isolation," "untethered from its context." *Vail-Bailon*, 838 F.3d at 1098. The dissent focused exclusively on one word ("capable") in one clause of the opinion, wholly disregarding the many explanatory passages surrounding it. As explained above, those passages, and the approving citation to *Flores*, make clear that "physical force" means "violent force;" "violent force" means a "degree" of "strength" or "power;" and the requisite degree of force is measured by its likelihood of causing injury or pain. That is why the Court held that a mere touching does not involve "physical force," but a "slap in the face" might. *Curtis Johnson*, 559 U.S. at 143.

44

Ignoring the fact that the Supreme Court used the word "degree" five separate times in defining "physical force," the dissent refused to analyze the "degree" of force, and looked only to the resulting harm. Again, in that backwards-looking view, even simple battery would qualify as a crime of violence because, although it requires only nominal force, it is still "capable" of causing harm in an outlier case. Accepting that overbroad interpretation of *Curtis Johnson* would not only contravene the holding in that case, but it would sweep virtually *every* offense into the elements clause, eliminating the distinction between violent and non-violent offenses that *Curtis Johnson* embraced and emphasized.

The Seventh Circuit in *Flores* also emphasized that distinction, drawing the line between "physical contact" and "physical force." 350 F.3d at 672. Although *Flores* involved a battery offense nearly identical to Florida felony battery, and *Curtis Johnson* expressly approved *Flores*, the dissent improperly refused to even consider *Flores*. *Vail-Bailon*, 838 F.3d at 1100 (Siler, J., dissenting). That failure was particularly erroneous not only because, as noted above, the Supreme Court in *Castleman* expressly confirmed that it had cited *Flores* with approval in *Curtis Johnson*, 134 S. Ct. at 1412, but also because the Court in *Castleman* further clarified its definition of "violent force" in *Curtis Johnson* by embracing additional components of the discussion in *Flores*.

45

Specifically, the Court in *Castleman* expressly agreed with *Flores*' statement (on a different page of the opinion) that "a squeeze of the arm that causes a bruise" was "hard to describe as violence" for purposes of the elements clause. *Id.* (quoting *Flores*, 350 F.3d at 670; brackets omitted). The Court characterized such conduct as a "[m]inor use[ ] of force" that "may not constitute 'violence' in the generic sense." *Id.* And plainly, if as the Court suggested in *Castleman*, squeezing someone's arm in a bruising manner is not a sufficient "degree" of force to satisfy *Curtis Johnson*, then certainly a mere offensive touching is not either.

The dissent erroneously disregarded *Castleman*, and missed the significance of the citation to *Flores* in clarifying the definition of "violent force" in *Curtis Johnson*. Contrary to the dissent, *Flores* was not irrelevant to the Court's definition of "*violent* force" in *Curtis Johnson.* Rather, it informed the intended meaning of the term "capable" within it. The dissent's contrary, non-contextual reading of *Curtis Johnson* is unsupportable under the law and should be rejected.

4.  **Can Florida felony battery, Fla. Stat. § 784.041, be committed by a touching that causes bodily harm where there is no intent to harm and it is unlikely that harm will result?**

This question has two parts, and the answer to both is yes. Florida felony battery can be committed by a touching where there is no intent to harm. And it can be committed where it is unlikely that harm will result. Indeed, the Florida felony battery offense was designed to capture precisely such conduct.

46

## A. Florida Felony Battery Does Not Require Intent to Harm

As explained above, the first element of felony battery is a form of simple battery, and it requires that the "touching or striking" be intentional. However, the second element of felony battery—the causation of great bodily harm, permanent disability, or permanent disfigurement—requires no additional intent or *mens rea*. Thus, while the touching or striking must be intentional, the defendant need not intend for his conduct to cause harm in order to commit felony battery. Quite the contrary, the offense is one of strict liability as to harm. Florida law is clear on this point.

As discussed above, simple battery requires actual and intentional touching or striking, or the intentional causation of bodily harm. Fla. Stat. § 784.03(1)(a). The offense of aggravated battery occurs when, in committing a battery, a person "*intentionally or knowingly* causes great bodily harm, permanent disability, or permanent disfigurement," or uses a deadly weapon. Fla. Stat. § 784.045(1)(a) (emphasis added). "Aggravated battery can thus be seen as simple battery plus intentionally or knowingly causing great bodily harm, etc." *T.S. v. State*, 965 So.2d 1288, 1290 (Fla. 2d DCA 2007).

Felony battery, "an offense defined in 1997, was created to 'fill the gap between simple battery and aggravated battery.'" *Id.* at 1290 n.3 (quoting *Jefferies*, 849 So.2d at 404). It takes the first form of simple battery (*i.e.*,

47

intentional touching or striking) and adds to it the "great bodily harm" element of aggravated battery. However, unlike the aggravated battery statute, the felony battery statute omits any *mens rea* requirement as to that second element. That critical omission is what distinguishes felony battery from aggravated battery.

That distinction is compelled by basic principles of statutory construction. "Under the canon of statutory construction *expressio unius est exclusio alterius*, the mention of one thing implies the exclusion of another." *Hearns*, 961 So.2d at 219. Here, the Legislature's express inclusion of a *mens rea* requirement for aggravated battery's causation of great bodily harm element implies its deliberate exclusion as to felony battery's great bodily harm element. Indeed, if felony battery *did* require the intentional causation of great bodily harm, then it would simply *be* aggravated battery. That would render the new, separate offense of felony battery entirely superfluous, contravening "Florida's 'elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.'" *United States v. Shannon*, 631 F.3d 1187, 1189 (11th Cir. 2011) (quoting *Mendenhall v. State*, 48 So.3d 740, 749 (Fla. 2010)).

In light of this statutory structure, it is well-established in Florida that felony battery's second element lacks any *mens rea*. It is for that reason that felony

48

battery is considered a "lesser included offense" of aggravated battery. Fla. Std. Jury Instr. (Crim.) 8.4;[7] *see, e.g.*, *Smith v. State*, 76 So.3d 379, 382, 387 (Fla. 1st DCA 2011) ("In finding Appellant [charged with aggravated battery] guilty of the lesser-included offense of felony battery, the jury determined that although Appellant actually and intentionally touched or struck Young against her will, resulting in great bodily harm, permanent disability, or permanent disfigurement, he did not intentionally or knowingly cause the victim harm."). Or, put conversely, aggravated battery is simply "felony battery with the added element of *intentionally or knowingly* causing the great bodily harm, etc." *T.S.*, 965 So.2d at 1290 (emphasis added).

The decision in *T.S.* vividly illustrates the point. In that case, a juvenile defendant was charged with and adjudicated delinquent of aggravated battery. *Id.* at 1289. On appeal, the court repeatedly recognized that, while aggravated battery requires a specific intent to cause the resulting harm, felony battery does not. *See id.* at 1290-91. In light of that key difference in *mens rea*, the appellate court reversed "for the trial court to reduce the [aggravated battery] adjudication to one

---

[7] *Accord V.C. v. State*, 63 So.3d 831, 833 (Fla. 3d DCA 2011) ("Felony battery is a lesser included offense of aggravated battery.") (citing standard jury instructions); *Williams v. State*, 65 So.3d 1209, 1210-11 (Fla. 2d DCA 2011) (observing that felony battery and simple battery are lesser included offenses of aggravated battery). *T.S.*, 965 So.2d at 1290 ("Felony battery is a necessarily lesser included offense of aggravated battery.") (citing standard jury instructions).

of felony battery." *Id.* at 1289. It found that, while the evidence "was sufficient to demonstrate battery with great bodily harm," it was insufficient to show that the defendant "intended to cause the enhanced level of harm or knew that this level of harm would be caused, such that the specific-intent element of aggravated battery was satisfied." *Id.* at 1290. That was so because, "while there was a verbal argument before T.S. struck the victim, the evidence indicate[d] that his punching of the victim was a quick, almost reflexive response to having tea thrown in his face." *Id.*

In short, Florida law establishes that, while the first element of felony battery requires an intentional touching or striking, the second element lacks any *mens rea* as to the causation of great bodily harm. Thus, "[t]he element of intent in felony battery is identical to simple battery." *Lewis v. State*, 817 So.2d 933, 934 (Fla. 4th DCA 2002). Accordingly, felony battery can be committed without intent to harm. And notably, because the harm in a felony battery occurs purely accidentally, the offense categorically fails to meet the elements clause for that additional reason as well.[8]

---

[8] Although the Court has simply asked the parties to brief whether there is an intent requirement in the phrase "physical force," and not whether the surrounding language in the elements clause requires a specific *mens rea* element for a qualifying crime, the Supreme Court has held that that broader phrase "use . . . of *physical against the person . . . of another*" in 18 U.S.C. § 16(a) "most naturally suggests a higher degree of intent than negligent or merely accidental conduct," and that "[i]nterpreting § 16 to encompass accidental or negligent conduct would

**B.   Florida Felony Battery Can Be Committed By Conduct Unlikely to Result in Harm**

Not only may Florida felony battery be committed without any intent to harm, but it may also be committed by conduct that is unlikely to result in harm. Indeed, that must be true given its two constituent elements.

As to its first element, the Legislature could have limited felony battery only to striking. Yet it declined to do so, deliberately retaining touching as a means of commission. Touching, of course, is much less likely than striking to result in great bodily harm. That is particularly true because, as explained above, felony battery can be committed by simple battery conduct, which requires only nominal contact. And a proper reading of *Curtis Johnson* makes clear that such *de minimis* contact is unlikely to cause harm or pain.

The second element of felony battery, as just discussed, provides that the resulting harm need not be intentionally caused. Logically, conduct that *unintentionally* causes great bodily harm is far less likely to bring about that result

---

(continued)

blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Leocal*, 543 U.S. at 10-11. Therefore, as just confirmed in *Voisine v. United States*, 579 U.S. ___, 136 S.Ct. 2272 (2016), an offense such as Florida felony battery in which harm is indisputably caused unintentionally, unknowingly, and accidentally does not require the "use of physical force *against the person of another*." *Id.* at 2279-2280 (emphasizing that "*Leocal* itself recognized the distinction between accidents and recklessness;" confirming that injury arising from a true "accident" is not the "'active employment' of force required by *Leocal*).

than conduct that is *intended* to do so. The absence of any *mens rea* as to this second element, coupled with the touching component of the first element, highlights that felony battery was designed to capture conduct that is unlikely to—but nonetheless does in fact—result in harm. Such conduct is more serious than simple battery (a misdemeanor, whether committed by touching, striking, or causing bodily harm), since it results in *great* bodily harm; but it is far less serious than aggravated battery, since the great bodily harm is unintentional. Again, felony battery perfectly fills that gap.

Several real-world examples illustrate that felony battery can easily be committed by a touching that is unlikely to, but nonetheless does, result in great bodily harm. The panel opinion correctly identified two. First, "a person can be guilty of felony battery . . . if the offender taps another person on the shoulder while that person stands near the top of stairs, and the person whose shoulder was tapped is either startled or otherwise reacts in such a way that he falls down the stairs and suffers grievous bodily harm." *Vail-Bailon*, 838 F.3d at 1095. Or, rather than falling down stairs, the surprised victim might have a heart attack. Second, the panel recognized that "a person can be guilty of felony battery in Florida if he tickles another and that person jerks back and, for example, stumbles through an open window." *Id*. Or, instead of stumbling through an open window, the victim

might reflexively lurch into a dangerous object, like a brick wall or the sharp corner of a table.

Additional examples abound.  As mentioned above, felony battery could occur if a person applied an innocuous lotion to another's skin, and that lotion unexpectedly triggered an allergic reaction.  Felony battery could occur if one person spit at, or non-consensually kissed, another and the saliva transmitted a disease or virus that the offender did not know he had.  Felony battery could occur if one person offensively touched another with dirty hands or an unsanitary object, and the germs caused an infection.  And felony battery could occur if one person offensively touched another's wound that was concealed by clothing, or if one person otherwise aggravated a pre-existing but latent medical condition in another.

In all of these examples, the offender engages in only a slight offensive touching without any intent to harm, and that contact unexpectedly results in great bodily harm.  This intermediate form of battery—falling between simple battery and aggravated battery—necessarily includes conduct that is unlikely to, but in fact does, cause great bodily harm.  And, as explained above, such conduct categorically does not qualify as a crime of violence under the elements clause, because it does not have as an element the "physical force," as interpreted by *Curtis Johnson*.

53

## CONCLUSION

Vail-Bailon's sentence should be vacated and his case remanded for

resentencing.

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER


*/s/ Brenda G. Bryn*
Brenda G. Bryn
Andrew L. Adler
Assistant Federal Public Defenders
Attorneys for Eddy Vail-Bailon
One East Broward Blvd., Suite 1100
Ft. Lauderdale, Florida 33301
Telephone No. (954) 356-7436

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation and typeface requirements of Fed. R. App. P. 32(a)(7)(B), because it contains 12,927 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P. 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman.

/s/ Brenda G. Bryn
Brenda G. Bryn

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 29th day of December, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent 20 copies to the Clerk of the Court via Federal Express for delivery by the next business day. I also certify that the foregoing document is being served this day via CM/ECF on Emily Smachetti, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

/s/ Brenda G. Bryn
Brenda G. Bryn
Assistant Federal Public Defender